IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

------------------------------------------------------------
                                          x

RESEARCH IN MOTION LIMITED,       :
                                           :

        *Plaintiff,*                     :
                                           :

            -against-                :
                                           :

ACE WIRELESS & TRADING, INC.,     :
(formally d/b/a ACE WIRELESS, INC.),  :
ACE WIRELESS GROUP INC, RBE       :
ENTERPRISES OF NY INC. (D/B/A      :
ROBERT BRANDON ENTERPRISES),    :
ROBERT EISENBERG, CMB WIRELESS  :            CIVIL ACTION NO.  09 CV 1147
GROUP, LLC (D/B/A CWG), CELLULAR  :
DISTRIBUTOR, INC., ETRONICS      :            (JURY TRIAL DEMANDED)
WORLDWIDE, LLC, PROMOBILITY,    :
INC., QUALITY ONE WIRELESS, LLC,  :
YAKETY YAK HOLDINGS LLC (D/B/A  :
YAK WIRELESS), YY WHOLESALE,    :
LLC,   YY HOLDINGS, LLC, ROBERT  :
PAYNE, TOUCHSTONE WIRELESS, LP,  :
PARAMOUNT WIRELESS, INC. (D/B/A  :
PARAMOUNT PRODUCTS GROUP), ALL  :
PRO DISTRIBUTING, INC., LAN       :
GLOBAL, INC., XTREME CELL PHONES  :
& ACCESSORIES, JOHN DOES 1-48, and  :
XYZ BUSINESSES,                 :
                                           :

        *Defendants.*               :
                                           :
------------------------------------------------------------ x

## FIRST AMENDED COMPLAINT

       Research In Motion Limited ("RIM") by its undersigned attorneys for its First Amended

Complaint against the defendants Ace Wireless & Trading, Inc., (formally d/b/a Ace Wireless,

Inc.), Ace Wireless Group, Inc., (collectively "ACE"), RBE Enterprises of NY Inc. (D/B/A

Robert Brandon Enterprises) ("RBE"), Robert Eisenberg ("Eisenberg"), CMB Wireless Group,

LLC (D/B/A CWG), Cellular Distributor, Inc., (together with CMB Wireless Group, LLC,

"CMB"), Etronics Worldwide, LLC, ("Etronics"), ProMobility, Inc., ("ProMobility"), Quality

One Wireless, LLC ("Quality One"), Yakety Yak Holdings LLC (D/B/A Yak Wireless) and YY Wholesale LLC (collectively "YAK"), YY Holdings, LLC, ("YY Holdings"), Robert Payne ("Payne"), Touchstone Wireless, LP ("Touchstone"), Paramount Wireless, Inc. (D/B/A Paramount Products Group) ("Paramount"), All Pro Distributing, Inc. ("All Pro"), Lan Global, Inc. ("Lan Global"), Xtreme Cell Phones & Accessories ("Xtreme"), John Does 1-48 and XYZ Businesses, (collectively "Defendants") alleges as follows:

<u>NATURE OF THE ACTION</u>

1.     This case is about the damage caused by the manufacture, sale and distribution of counterfeit, infringing, and diluting batteries by the Defendants, not only to the BLACKBERRY brand and RIM's business and reputation, but also the potential harm posed to consumers by these counterfeit products.

2.     In July and October of 2009, RIM, the designer, manufacturer and marketer of the world-renowned BLACKBERRY smartphones received complaints from users in the United States alleging that their BLACKBERRY smartphone battery overheated and caused property damage.

3.     RIM immediately investigated these complaints and determined that the BLACKBERRY smartphones in both instances contained counterfeit batteries that failed. These batteries were sourced from two of the Defendants.

4.     RIM places considerable effort into every aspect of product design, including the design of BLACKBERRY smartphone batteries.  BLACKBERRY batteries have numerous safety features that are designed to prevent them from malfunctioning or causing damage to BLACKBERRY users and/or their property.

5.     RIM seeks injunctive and monetary relief against the Defendants for: (a) federal trademark counterfeiting under 15 U.S.C. § 1114; (b) federal trademark infringement under 15 U.S.C. § 1114; (c) federal false description and false designation of origin in commerce under 15 U.S.C. § 1125; (d) federal trade dress infringement under 15 U.S.C. § 1125; (e) federal trademark dilution under 15 U.S.C. § 1125; (f) federal trade dress dilution under 15 U.S.C. § 1125; (g) trademark infringement under Tennessee statutory law (Tenn. Code Ann. §47-25-512); (h) trademark infringement and unfair competition under the common law of the State of Tennessee; (i) trademark dilution under the statutory law of Tennessee (Tenn. Code Ann. §47-25-513) and (j) deceptive trade practices under the Tennessee Consumer Protection Act. § 47-18-104.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 and general principles of ancillary, pendent and supplemental jurisdiction.

7.     This Court has personal jurisdiction over the Defendants because they conduct business in the State of Tennessee.  At a minimum, the Defendants ACE, RBE, ProMobility, Quality One, YAK, Touchstone, Paramount and All Pro have sold counterfeit batteries to Asurion Corp. ("Asurion"), a major supplier of BLACKBERRY-branded batteries to end users in the United States and Canada.  Asurion is based in Tennessee and offers extended warranty coverage for mobile phones to many thousands of end users around the world.  Defendant, Lan Global, sold counterfeit batteries to Defendant Paramount as well as possibly to Defendants Quality One and YAK which, in turn, sold them to Asurion.  All of the above-mentioned batteries have been stored by Asurion in this judicial district.  In addition, from September 2008

to November 2008, defendant Lan Global sold to Asurion 3,250 BLACKBERRY-branded batteries which Lan Global shipped to Asurion's Smyrna, Tennessee facility.

8.     Defendants Eisenberg, Payne, YY Wholesale, CMB, Etronics and Xtreme have been served as either an XYZ Business defendant or a John Doe defendant pursuant to the Court's December 4, 2009 Order.  These Defendants have submitted to personal jurisdiction of this Court by consenting to the entry of an order from this Court, preliminarily enjoining them from *inter alia* selling counterfeit BLACKBERRY batteries pending the resolution of this case.

9.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391.

## THE PARTIES

### THE PLAINTIFF

10.     Research In Motion Limited is a corporation organized and existing under the laws of the province of Ontario, Canada, having its principal place of business at 295 Phillip Street, Waterloo, Ontario, Canada N2L 3W8.

11.     RIM is a leading designer, manufacturer and marketer of innovative wireless solutions for the worldwide mobile communications market.  Through the development of integrated hardware, software and services that support multiple wireless network standards, RIM provides platforms and solutions for seamless access to time-sensitive information including email, telephone, text messaging, Internet and intranet-based applications.  RIM technology also enables a broad array of third party developers and manufacturers to enhance their products and services with wireless connectivity to data.

12.     RIM's portfolio of award-winning products, services and embedded technologies are used by thousands of organizations throughout the world and include the BLACKBERRY

wireless platform and the RIM handheld product line. RIM's BLACKBERRY smartphones are powered by RIM's proprietary batteries.

13.     With millions of wireless subscribers worldwide, RIM's BLACKBERRY smartphones have become one of the most well-known and successful of all wireless handheld product lines in the market.

14.     BLACKBERRY-branded products are available from approximately 500 carriers and distribution partners in 170 countries around the world. RIM has over 13,000 employees worldwide. In August 2009, RIM was ranked as the world's fastest growing company by Fortune Magazine. BLACKBERRY products are used by approximately 32 million subscribers globally, with millions of wireless subscribers in the United States. In fact, RIM's BLACKBERRY has become one of the most recognized and respected brands in the industry. The brand's growing recognition and respect has been widely recognized. Most recently, BLACKBERRY® was ranked among the top 100 Best Global Brands by Interbrand (September, 2009) with an attributed brand value in excess of $5 billion.

15.     RIM's BLACKBERRY smartphone line has thus become one of the most well-known and successful of all wireless handheld product lines in both the United States and elsewhere.

THE DEFENDANTS

16.     Upon information and belief, the Defendant Ace Wireless & Trading Inc. is an inactive New Jersey corporation with a place of business located at 1751 Langley Ave Irvine, California 92614.

17.     Upon information and belief, the Defendant Ace Wireless Group Inc. is a California corporation with a place of business located at 1751 Langley Ave Irvine, California 92614.

18.     Upon information and belief, the Defendant RBE is a New York corporation with a place of business located at 192 Quality Plaza, Hicksville, New York 11801.

19.     Upon information and belief, the Defendant Eisenberg is an individual and is the President and owner of the Defendant, RBE. At all material times, Eisenberg controlled and directed the activities of and operated RBE.

20.     Upon information and belief, the Defendant CMB Wireless Group, LLC (D/B/A CWG) is a New York corporation with places of business at 116 Wilbur Place, Bohemia, New York, 11716; 630 Broadway Avenue, Holbrook, New York, 11741; and 2130 Pond Road, Ronkonkoma, New York, 11779.

21.     Upon information and belief, the Defendant Cellular Distributor, Inc., is a New York corporation with places of business at 116 Wilbur Place, Bohemia, New York, 11716; 630 Broadway Avenue, Holbrook, New York, 11741; and 2130 Pond Road, Ronkonkoma, New York, 11779.

22.     Upon information and belief, the Defendant Etronics is a New Jersey corporation with a place of business at 125 Broad Avenue, North Bergen, New Jersey, 07074.

23.     Upon information and belief, the Defendant ProMobility is an Ontario corporation with a place of business located at 18-85 Citizen Court Markham, Ontario, Canada L6G 1A8.

24.     Upon information and belief, the Defendant Quality One is a Nevada corporation with a place of business located at 1500 Tradeport Drive, Orlando, Florida 32824.

25.     Upon information and belief, the Defendant Yakety Yak Holdings LLC is an Arizona corporation with a place of business located at 3400 Irvine Avenue, Suites 118 and 121, Newport Beach, CA 92660.

26.     Upon information and belief, the Defendant YY Holdings, LLC is a California corporation with a place of business located at 3400 Irvine Avenue, Suites 118 and 121, Newport Beach, CA 92660.

27.     Upon information and belief, the Defendant YY Wholesale is a California corporation with a place of business at 3400 Irvine Avenue, Suites 118 and 121, Newport Beach, California, 92660.

28.     Upon information and belief, the Defendant Payne is an individual and is the President and owner of the Defendant, YY Wholesale. At all material times, Payne controlled and directed the activities of and operated YY Wholesale.

29.     Upon information and belief, the Defendant Touchstone is a corporation or limited partnership (state of origin unknown) with a place of business located at 2536 West State St. Bristol, Tennessee 37620.

30.     Upon information and belief, the Defendant Paramount is a California corporation with a place of business located at 14938 Delano St., Van Nuys, California 91411.

31.     Upon information and belief, the Defendant All Pro is a California corporation with a place of business located at 13051 Saticoy Blvd. Ste #A North Hollywood, California 91605.

32.     Upon information and belief, the Defendant Lan Global is a California corporation with a place of business located at 14122 Aetna Street, Van Nuys, California 91401.

33.     Upon information and belief, the Defendant Xtreme is a corporation (state of incorporation unknown) with a place of business at 12328 Gladstone Avenue, Sylmar, California 91342.

34.     The John Doe defendants 1-48 are individuals residing in the United States or Canada who manufactured, purchased, sold or otherwise distributed counterfeit BLACKBERRY-branded batteries in the United States. In the alternative, at all material times the John Doe defendants 1-48 directed the activities of and operated XYZ Businesses who manufactured, purchased, sold or otherwise distributed counterfeit BLACKBERRY-branded batteries in the United States.

35.     At all material times, XYZ Businesses manufactured, purchased, sold or otherwise distributed counterfeit BLACKBERRY-branded batteries in the United States.

<u>RIM'S TRADEMARKS AND TRADE DRESS</u>

36.     The BLACKBERRY Trademarks and Trade Dress, as defined herein, represent RIM's commitment to providing high quality smartphones and related accessories.  RIM has developed enormous amounts of goodwill, and the BLACKBERRY Trademarks and Trade Dress are of inestimable value to RIM.

37.     RIM owns numerous trademarks identifying its BLACKBERRY handheld product line and products and services related thereto, including without limitation, the following U.S. federal registrations:

| RIM U.S. REGISTRATION NOS. | RIM TRADEMARK |
|---|---|
| Reg. No. 2036380, 2833837 | RESEARCH IN MOTION |

| Reg. No. 2402763, 2678454 | *BLACKBERRY* |
|---|---|
| Reg. Nos. 2672464, 2700671, 2844340 | BLACKBERRY |
| Reg. No. 3102687 | **BlackBerry** |
| Reg. Nos. 3105797, 3240231 | |

(These marks are collectively referred to herein as the "BLACKBERRY Trademarks"). (True and correct copies of the certificates of registration for the BLACKBERRY Trademarks are attached hereto as Exhibit 1).

38.     All of RIM's BLACKBERRY batteries use some or all of the BLACKBERRY Trademarks.

39.     RIM also has a distinctive Trade Dress for its batteries. A true description of RIM's proprietary BLACKBERRY batteries and the distinctive Trade Dress associated with the BLACKBERRY C-X2, D-X1, C-M2 and C-S2 series batteries is depicted and described in Exhibit 2.

40.     The total overall impression of each of the batteries depicted in Exhibit 2 constitutes the BLACKBERRY Trade Dress ("BLACKBERRY Trade Dress") and distinguishes the BLACKBERRY batteries from the products of others.

41.     In fiscal 2009, RIM spent in excess of $300 million advertising and promoting products bearing the BLACKBERRY Trademarks. Total RIM sales for all products bearing the

BLACKBERRY Trademarks in fiscal year 2009 were in excess of $5 billion for the United States alone.

42.     Since fiscal year 2005, in the United States alone, RIM has sold in excess of 30 million BLACKBERRY smartphones having genuine RIM batteries bearing the BLACKBERRY Trade Dress.  Typically, the consumer must install the battery.  RIM also sells replacement batteries bearing the BLACKBERRY Trade Dress through accessory sales channels including U.S. carrier partners such as T-Mobile, Verizon, AT&T, Sprint and others as well as directly from RIM at www.shopblackberry.com.

43.     As a result of RIM's extensive use of the BLACKBERRY Trademarks and Trade Dress in this judicial district and elsewhere in the United States, RIM has acquired extremely valuable rights in the BLACKBERRY Trademarks and Trade Dress, and the goodwill associated with each of them.  People throughout the world recognize products bearing BLACKBERRY Trademarks and/or Trade Dress as containing high quality products made and distributed by RIM.  The BLACKBERRY Trademarks and Trade Dress are well-known and respected by consumers worldwide.

44.     RIM has engaged and continues to engage in interstate activities designed to promote BLACKBERRY Trademarks and Trade Dress and the business and goodwill associated with each of its marks, trade dress, logos and property in the State of Tennessee and throughout the United States.

45.     The BLACKBERRY Trade Dress and BLACKBERRY Trademarks are well known, associated with RIM, and inherently distinctive.

46.     REDACTED

DEFENDANTS AND THEIR ACTIVITIES

    47.     Defendants are improperly profiting from RIM's substantial investment in its BLACKBERRY Trademarks, Trade Dress, and reputation by incorporating, in whole and in part, RIM's BLACKBERRY Trademarks and Trade Dress on counterfeit, infringing and diluting batteries which they are selling to the public.

    48.     Defendants' products are potentially dangerous to consumers and the public.  In July and October 2009, RIM learned of two cases involving allegations that batteries for two BLACKBERRY smartphones had overheated and damaged a house and a car.

    49.     RIM investigated these incidents and determined that the batteries that overheated were counterfeit batteries supplied by Asurion.  Asurion advised RIM that it had purchased the batteries from non-RIM authorized suppliers.

50.     RIM was concerned that Asurion may have additional counterfeit batteries in stock and asked Asurion to quarantine all its remaining batteries purchased from non-RIM authorized suppliers.  Asurion agreed and quarantined over 30,000 batteries.

51.     With the exception of the Defendant, Lan Global, each of the original Defendants sold BLACKBERRY-branded batteries directly to Asurion.  Lan Global sold BLACKBERRY-branded batteries to at least the Defendants Quality One, Paramount and YAK, who each, in turn, sold them to Asurion.

52.     REDACTED

53. As of November 2, 2009, Asurion had quarantined the following batteries purchased from the Defendants in the quantities and models below:

| | BATTERY TYPE AND QUANTITY | | | | |
|---|---|---|---|---|---|
| ASURION SOURCES | D-X1 (Storm)[1] | C-S2 (7100) | C-X2 (8800) | C-M2 (8100) | TOTAL QUARANTINED |
| ACE | 5645 | 5247 | 1282 | 4809 | 16983 |
| RBE | 0 | 3136 | 494 | 0 | 3630 |
| ProMobility | 0 | 0 | 140 | 141 | 281 |
| Quality One | 717 | 773 | 1724 | 2770 | 5984 |
| YAK | 0 | 33 | 610 | 250 | 893 |
| Touchstone | 0 | 0 | 499 | 0 | 499 |
| Paramount | 0 | 0 | 700 | 0 | 700 |
| All Pro | 1398 | 0 | 0 | 0 | 1398 |

54.  REDACTED

---

[1] Battery Code used by Asurion.

85455682.1

- 13 -

Case 3:09-cv-01147    Document 133    Filed 01/19/2010    Page 13 of 44

REDACTED

55.    REDACTED

56.    REDACTED

57.    Set forth below are RIM's bases for concluding that the batteries of each supplier are counterfeits and the bases for adding the additional named Defendants.

ACE

58.    All of the C-X2 batteries tested by RIM and sold by ACE to Asurion are counterfeit for at least the following reasons: (1) the labels are counterfeit; (2) the batteries failed RIM's electrical testing; (3) the batteries were missing all of the safety features identified above

(thermistor, thermal fuse and pressure release vent); and (4) the batteries did not comply with safety standards promulgated by the IEEE Standards Organization, a global standards setting body that develops industry consensus standards to which RIM adheres.

RBE

59.     Two of the RBE C-S2 batteries tested by RIM and sold by RBE to Asurion are counterfeit for at least the following reasons: (1) the labels are counterfeit; (2) the batteries failed RIM's electrical testing; (3) the batteries were missing all of the safety features identified above (thermistor, thermal fuse and pressure release vent); and (4) the batteries did not comply with safety standards promulgated by the IEEE Standards Organization.

PROMOBILITY

60.     All of the ProMobility C-M2 batteries tested by RIM and sold by ProMobility to Asurion are counterfeit because the labels are counterfeit.

61.     All of the ProMobility DX-1 batteries tested by RIM and sold to Asurion by ProMobility are counterfeit for at least the following reasons: (1) the labels are counterfeit; (2) the batteries failed RIM's electrical testing; (3) the batteries were missing all of the safety features identified above (thermistor, thermal fuse and pressure release vent); and (4) and the batteries did not comply with the safety standards promulgated by the IEEE Standards Organization.

62.     In addition, visual and/or electrical testing confirmed that over thirty BLACKBERRY-branded batteries purchased from three separate ProMobility locations in Ontario, Canada in December 2009 were counterfeit.  In many instances these batteries were sold by ProMobility for less than half of the retail price of a new battery.

QUALITY ONE

63.     All of the C-X2 batteries tested by RIM and sold by Quality One to Asurion are counterfeit for at least the following reasons: (1) the labels are counterfeit; (2) the batteries failed RIM's electrical testing; (3) the batteries were missing all of the safety features identified above (thermistor, thermal fuse and pressure release vent); and (4) the batteries did not comply with safety standards promulgated by the IEEE Standards Organization.

YAK

64.     All of the C-S2 and C-X2 batteries tested by RIM and sold by YAK to Asurion are counterfeit for at least the following reasons: (1) the labels are counterfeit; (2) the batteries failed RIM's electrical testing; (3) the batteries were missing all of the safety features identified above (thermistor, thermal fuse and pressure release vent); and (4) the batteries did not comply with safety standards promulgated by the IEEE Standards Organization.

YY WHOLESALE

65.     YY Wholesale is one of the YAK corporate entities that sold batteries to Asurion, which RIM determined were counterfeit.

YY HOLDINGS

66.     Defendant YY Holdings has offices in the same suite as YAK, shares computer equipment with YAK and, has at least one common employee with YAK.

TOUCHSTONE

67.     Twelve of the C-X2 batteries tested by RIM and sold by Touchstone to Asurion are counterfeit for at least the following reasons: (1) the labels are counterfeit; (2) the batteries

failed RIM's electrical testing; (3) the batteries were missing all of the safety features identified above (thermistor, thermal fuse and pressure release vent); and (4) the batteries did not comply with safety standards promulgated by the IEEE Standards Organization.

PARAMOUNT

68. All of the C-X2 batteries tested by RIM and sold by Paramount to Asurion are counterfeit for at least the following reasons: (1) the labels are counterfeit; (2) the batteries failed RIM's electrical testing; (3) the batteries were missing all of the safety features identified above (thermistor, thermal fuse and pressure release vent); and (4) the batteries did not comply with safety standards promulgated by the IEEE Standards Organization.

ALL PRO

69. All of the All Pro D-X1 batteries tested by RIM and sold by All Pro to Asurion are counterfeit for at least the following reasons: (1) the labels are counterfeit; (2) the batteries failed RIM's electrical testing; (3) the batteries were missing all of the safety features identified above (thermistor, thermal fuse and pressure release vent); and (4) the batteries did not comply with safety standards promulgated by the IEEE Standards Organization.

CMB

70. During the course of executing the Court's December 4, 2009 Order at Defendant All Pro, a package from CMB arrived at All Pro, containing counterfeit BLACKBERRY batteries.

ETRONICS

71. During the course of executing the Court's December 4, 2009 Order at Defendant RBE's location, Defendant Eisenberg advised that counterfeit BLACKBERRY batteries in

RBE's possession had been purchased from Defendant Etronics and documents were obtained from RBE that confirmed RBE's purchase of BLACKBERRY batteries determined to be counterfeit.

XTREME

72.     During the course of executing the Court's December 4, 2009 Order at Defendant Quality One's location, documents were obtained showing BLACKBERRY batteries in Quality One's possession had been purchased from Defendant, Xtreme.  Those batteries were determined to be counterfeit.

73.     The Defendants are not affiliated with or sponsored by RIM and have not been authorized by RIM to sell the batteries at issue.  The Defendants' batteries are not only confusing to the public and damaging to RIM's business and reputation, but, given the lack of safety features and the fact that two of the batteries have already overheated, they pose a potential safety risk to the public as well.  RIM is extremely concerned about the irreparable harm that is being caused to it and the potential harm to the public, should the Defendants' sale of the counterfeit BLACKBERRY batteries continue.

74.     The Defendants, without authorization or license from RIM, have knowingly and willfully used, reproduced and/or copied RIM's BLACKBERRY Trademarks, Trade Dress, and products in connection with distributing, selling and offering to sell hazardous batteries in interstate commerce which are counterfeit, infringing, and diluting copies of RIM BLACKBERRY batteries.

75.     The Defendants' conduct is likely to cause confusion in the marketplace as to the source of the goods, deceive the public, and harm and dilute the RIM BLACKBERRY Trademarks and Trade Dress.

76.     Many of the batteries sold by the Defendants are not genuine RIM or BLACKBERRY products. RIM did not manufacture, inspect or package these counterfeits and did not approve them for sale and/or distribution. Upon information and belief, the Defendants either knew that some of their batteries were counterfeit or, at a minimum, were willfully blind to the facts and failed to make diligent inquiry.

77.     The Defendants are not affiliated with or sponsored by RIM and have not been authorized by RIM to sell the batteries at issue, or to use them with any BLACKBERRY Trademark or Trade Dress.

78.     The Defendants are trading on and receiving the benefit of the goodwill RIM has established in its BLACKERRY Trademarks and Trade Dress with considerable labor and expense over many years, and to gain acceptance of their goods and services not on their own merit, but on the reputation and goodwill of RIM.

79.     The Defendants' unauthorized products and sales remove from RIM the ability to control the nature and quality of its goods and places the valuable reputation and goodwill of RIM into the hands of the Defendants, over whom RIM exerts no control.

80.     Unless the acts of the Defendants are temporarily, preliminarily and permanently enjoined by this Court, such acts will continue to cause irreparable injury to RIM and to the public for which there is no adequate remedy at law. Upon information and belief, the Defendants' acts have been deliberate, willful, intentional and in bad faith, with full knowledge

and in conscious disregard of RIM's rights in the BLACKBERRY Trademarks and Trade Dress and with an intent to trade on the goodwill RIM has established in the BLACKBERRY Trademarks and Trade Dress.

## FIRST CAUSE OF ACTION:
### Federal Trademark Counterfeiting

81.     RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

82.     In violation of 15 U.S.C. § 1114, the Defendants' used in commerce, without RIM's consent, either a reproduction, counterfeit, copy or colorable imitation of the BLACKBERRY Trademarks in connection with the sale, offering for sale, distribution, or advertising of counterfeit batteries that is likely to cause confusion, or to cause mistake or to deceive.

83.     The acts of the Defendants complained of herein constitute trademark counterfeiting and RIM has suffered damages as a result.

## SECOND CAUSE OF ACTION:
### Federal Trademark Infringement

84.     RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

85.     The acts of the Defendants complained of herein constitute trademark infringement in violation of  15 U.S.C. § 1114 and RIM has suffered damages as a result.

## THIRD CAUSE OF ACTION:
### Federal False Description And False Designation Of Origin In Commerce

86.     RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

87.     In violation of 15 U.S.C. § 1125, the Defendants used a word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was or is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendants with RIM or as to the origin, sponsorship, or approval of the Purported BLACKBERRY Batteries by RIM.

88.     The acts of the Defendants complained of herein constitute false description and false designation and RIM has suffered damages as a result.

FOURTH CAUSE OF ACTION:
Federal Trade Dress Infringement

89.     RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

90.     In violation of 15 U.S.C. § 1125(a), Defendants use the BLACKBERRY Trade Dress to misrepresent the nature, characteristics, qualities, or origin of their products, in a way that is likely to cause confusion, or to cause mistake, or to deceive.

91.     The acts of the Defendants complained of herein constitute trade dress infringement and RIM has suffered damages as a result.

FIFTH CAUSE OF ACTION:
Federal Trademark Dilution

92.     RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

93.     RIM's BLACKBERRY Trademarks are famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

94.     The Defendants began to sell their products at issue after RIM's BLACKBERRY Trademarks became famous.

95.     The Defendants have diluted and are likely to dilute RIM's BLACKBERRY Trademarks.

96.     The acts of the Defendants complained of herein constitute trademark dilution and RIM has suffered damages as a result.

SIXTH CAUSE OF ACTION:
Federal Trade Dress Dilution

97.     RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

98.     RIM's BLACKBERRY Trade Dress is famous and distinctive within the meaning of 15 U.S.C. § 1125(c).

99.     The Defendants began to sell their products at issue after RIM's BLACKBERRY Trade Dress became famous.

100.    The Defendants have diluted and are likely to dilute RIM's BLACKBERRY Trade Dress.

101.    The acts of the Defendants complained of herein constitute trademark dilution and RIM has suffered damages as a result.

SEVENTH CAUSE OF ACTION
State Statutory Trademark Infringement

102.    RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

103. The Defendants' acts complained of herein constitute trademark infringement in violation of Tenn. Code Ann. §47-25-512 and RIM has suffered damages as a result.

## EIGHTH CAUSE OF ACTION
### State Common Law Trademark Infringement and Unfair Competition

104. RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

105. The Defendants' acts complained of herein constitute trademark infringement and unfair competition in violation the common law of the State of Tennessee and RIM has suffered damages as a result.

## NINTH CAUSE OF ACTION:
### State Trademark Dilution

106. RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

107. The Defendants' acts complained of herein constitute trademark dilution in violation of Tenn. Code Ann. § 47-25-513 and RIM has suffered damages as a result.

## TENTH CAUSE OF ACTION:
### Tennessee Deceptive Trade Practices

108. RIM repeats and realleges each and every paragraph set forth above as if fully set forth herein.

109. The Defendants' acts complained of herein constitute deceptive trade practices in violation of Tennessee Code Ann. § 47-18-104 and RIM has suffered damages as a result.

## PRAYER FOR RELIEF

WHEREFORE, RIM prays that:

(a)     The Defendants, their agents, servants, employees and all persons acting in concert or participating with the Defendants, be temporarily, preliminarily and permanently enjoined and restrained from:

(i)     using in any manner including without limitation on batteries and any other products the BLACKBERRY Trademarks and Trade Dress, or any trademarks or trade dress confusingly similar thereto, alone or in combination with any word or designs so as to be likely to cause confusion, deception, or mistake in connection with the advertising, offering for sale or sale of any products other than as expressly authorized by RIM in writing;

(ii)     passing off, inducing or enabling others to sell or pass off any batteries or other products as a battery or other products produced by or for RIM, which are not RIM's batteries, or not produced under the control and supervision of RIM and approved by RIM for sale;

(iii)     committing any acts calculated to cause the public to believe that Defendants' counterfeit products are those sold under the control and supervision of RIM, or sponsored or approved by, or in connection with, or guaranteed by, or produced under the control and supervision of RIM;

(iv)     further diluting and infringing BLACKBERRY Trademarks and Trade Dress and damaging RIM's goodwill;

(v)     otherwise unfairly competing with RIM in the sale, offering for sale or distribution of counterfeit BLACKBERRY-branded batteries;

(vi)     shipping, delivering, distributing, returning or otherwise disposing of, in any manner, any counterfeit or infringing BLACKBERRY-branded batteries;

(vii)     using any reproduction, counterfeit, copy or colorable imitation of any of the BLACKBERRY Trademarks and Trade Dress in connection with the publicity, promotion, sale or advertising of the products manufactured, received, acquired, imported, shipped, purchased, sold, offered for sale or distributed by Defendants;

(viii)     affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or symbols tending to falsely describe or represent such products as being BLACKBERRY batteries and from offering such goods in commerce;

(ix)     destroying any records documenting the manufacture, distribution, sale or receipt of any counterfeit or infringing BLACKBERRY batteries; and

(x)     assisting, aiding or abetting any other person or business entity to engage in or perform any of the activities referenced in subparagraphs (i) through (ix) above.

(b)     Defendants be required to deliver to RIM any and all products, guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional and other materials in the possession of the Defendants or under their control bearing any BLACKBERRY Trademarks and/or Trade Dress, or each of them, alone or in combination with any other words or used in connection with the advertising, offering for sale

or sale of products which are not genuine RIM products, or not made under the authorization and control of RIM;

(c)　the Defendants, within three (3) days after the entry of service on Defendants of an injunction, whether temporary, preliminary or permanent, be ordered to provide RIM with a complete list of individuals or entities (including names, addresses and other contact information) from whom they have purchased and to whom they have distributed and/or sold all products bearing RIM's BLACKBERRY Trademarks and/or Trade Dress;

(d)　the Defendants be required to deliver to RIM for destruction their entire inventory of counterfeit and infringing products;

(e)　the Defendants, within fifteen (15) days after the entry and service on Defendants of an injunction, whether temporary, preliminary, or permanent, be ordered to file with this Court and serve upon RIM a written report under oath setting forth in detail the manner in which each of the Defendants has complied with this injunction;

(f)　RIM recover all damages it has sustained as a result of Defendants' activities and that said damages be trebled;

(g)　RIM recover exemplary damages;

(h)　Each of the Defendants account for and pay over to RIM profits realized by the Defendants by reason of the Defendants' unlawful acts, increased as the Court finds to be just under the circumstances of this case;

(i)　RIM be awarded reasonable attorneys' fees, costs of this action, and prejudgment and postjudgment interest; and

(j)　RIM recover such other relief as this Court deems appropriate.

Respectfully submitted,

Dated: January 19, 2010

_____
Mark N. Mutterperl
Colin Foley
Jessica S. Parise
FULBRIGHT & JAWORSKI L.L.P.
666 Fifth Avenue
New York, New York 10103
Tel: (212) 318-3000
Fax: (212) 318-3400

Paige Waldrop Mills
BASS, BERRY & SIMS PLC
150 Third Avenue S
Suite 2800
Nashville, TN 37201
Tel: (615) 742-7770
Fax: (615) 742-0429

*Attorneys for Plaintiff*
*Research In Motion Limited*

## JURY DEMAND

Research In Motion Limited demands trial by jury of all issues so triable.

_____

# EXHIBIT 1

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

**United States Patent and Trademark Office**

Reg. No. 2,036,380

Registered Feb. 11, 1997

## TRADEMARK
### PRINCIPAL REGISTER

## RESEARCH IN MOTION

RESEARCH IN MOTION LIMITED (CANADA
 CORPORATION)
180 COLUMBIA ST W, UNIT 1111
WATERLOO ONTARIO, CANADA N2L 3L3

FOR: COMPUTER SOFTWARE AND COM-
PUTER HARDWARE AND RADIO BASED DE-
VICES AND PARTS THEREFORE, USED IN
THE FIELDS OF BUSINESS, SCIENCE, MEDI-
CINE EDUCATION, DEFENSE, ENTERTAIN-
MENT AND PERSONAL COMPUTING, FOR
USE IN PROVIDING A COMMUNICAITONS
GATEWAY TO FACILITATE THE RECEIPT
AND TRANSMISSION OF COMPUTER INFOR-
MATION AND DATA VIA A WIRELESS
REMOTE ACCESS TO COMPUTER APPLICA-
TIONS AND NETWORK ENVIRONMENTS
WITH NO REQUIREMENT FOR A DIRECT,
REAL-TIME INTERFACE, IN CLASS 9 (U.S.
CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-0-1991; IN COMMERCE
1-0-1991.

OWNER OF U.S. REG. NO. 1,982,049.

SER. NO. 74-603,503, FILED 11-28-1994.

G. T. GLYNN, EXAMINING ATTORNEY

Int. Cls.: 9, 38 and 41

Prior U.S. Cls.: 21, 23, 26, 36, 38, 100, 101, 104 and 107

Reg. No. 2,833,837

## United States Patent and Trademark Office

Registered Apr. 20, 2004

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER

## RESEARCH IN MOTION

RESEARCH IN MOTION LIMITED (CANADA CORPORATION)
295 PHILLIP STREET
WATERLOO, ONTARIO, CANADA N2L 3W8

FOR: ELECTRONIC HANDHELD UNITS FOR THE WIRELESS RECEIPT AND/OR TRANSMISSION OF DATA THAT ENABLE THE USER TO KEEP TRACK OF OR MANAGE PERSONAL INFORMATION AND WHICH MAY ALSO HAVE THE CAPACITY TO TRANSMIT AND RECEIVE VOICE COMMUNICATIONS; SOFTWARE FOR THE REDIRECTION OF MESSAGES, GLOBAL COMPUTER NETWORK E-MAIL, AND OTHER DATA TO ONE OR MORE ELECTRONIC HANDHELD UNITS FROM A DATA STARE ON OR ASSOCIATED WITH A PERSONAL COMPUTER OR A SERVER; SOFTWARE FOR THE SYNCHRONIZATION OF DATA BETWEEN A REMOTE STATION OR UNIT AND A FIXED OR REMOTE STATION OR UNIT AND SOFTWARE WHICH ENABLES AND PROVIDES ONE-WAY AND TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-0-1991; IN COMMERCE 1-0-1991.

FOR: E-MAIL SERVICE; WIRELESS DATA MESSAGING SERVICES, PARTICULARLY SERVICES THAT ENABLE A USER TO SEND AND/OR RECEIVE MESSAGES THROUGH A WIRELESS DATA NETWORK; ONE-WAY AND TWO-WAY PAGING SERVICES; TRANSMISSION AND RECEPTION OF VOICE COMMUNICATION SERVICES; CONSULTATION ON THE TOPICS OF DEVELOPING AND INTEGRATING ONE-WAY OR TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, AND/OR COMMUNICATIONS, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 1-0-1991; IN COMMERCE 1-0-1991.

FOR: EDUCATIONAL SERVICES, NAMELY, CLASSES, SEMINARS AND CONFERENCES FOR THE PURPOSE OF PROVIDING INFORMATION TO THIRD PARTIES TO ASSIST THEM IN DEVELOPING AND INTEGRATING ONE-WAY OR TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, AND VOICE COMMUNICATIONS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 1-0-1991; IN COMMERCE 1-0-1991.

OWNER OF U.S. REG. NO. 2,036,380.

SER. NO. 76-469,784, FILED 11-26-2002.

RONALD AIKENS, EXAMINING ATTORNEY

Int. Cl.: 38

Prior U.S. Cls.: 100, 101, and 104

**United States Patent and Trademark Office**

Reg. No. 2,402,763

Registered Nov. 7, 2000

## SERVICE MARK
### PRINCIPAL REGISTER

# *BLACKBERRY*

RESEARCH IN MOTION LIMITED (CANADA CORPORATION)
295 PHILLIP STREET
WATERLOO, ONTARIO N2L 3W8, CANADA

FOR: E-MAIL SERVICE; WIRELESS DATA MESSAGING SERVICES, PARTICULARLY SERVICES THAT ENABLE A USER TO SEND AND/OR RECEIVE MESSAGES THROUGH A WIRELESS DATA NETWORK; ONE-WAY AND TWO-WAY PAGING SERVICES, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 7-14-1998; IN COMMERCE 1-19-1999.

SN 75-626,990, FILED 1-25-1999.

KEVON CHISOLM, EXAMINING ATTORNEY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36, and 38

**United States Patent and Trademark Office**

Reg. No. 2,678,454
Registered Jan. 21, 2003

## TRADEMARK
### PRINCIPAL REGISTER

# *BLACKBERRY*

RESEARCH IN MOTION LIMITED (CANADA
 CORPORATION)
295 PHILLIP STREET
WATERLOO, ONTARIO, CANADA N2L 3W8

FOR: ELECTRONIC HANDHELD UNITS FOR
THE WIRELESS RECEIPT AND/OR TRANSMIS-
SION OF DATA THAT ENABLE THE USER TO
KEEP TRACK OF OR MANAGE PERSONAL IN-
FORMATION; SOFTWARE FOR THE REDIREC-
TION OF MESSAGES, GLOBAL COMPUTER
NETWORK E-MAIL, AND/OR OTHER DATA TO
ONE OR MORE ELECTRONIC HANDHELD UNITS
FROM A DATA STORE ON OR ASSOCIATED WITH
A PERSONAL COMPUTER OR A SERVER; AND

SOFTWARE FOR THE SYNCHRONIZATION OF
DATA BETWEEN A REMOTE STATION OR UNIT
AND A FIXED OR REMOTE STATION OR UNIT, IN
CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 7-14-1998; IN COMMERCE 1-19-1999.

THE DRAWING IS LINED FOR THE COLOR
MAROON.

SN 75-626,991, FILED 1-25-1999.

KEVON CHISOLM, EXAMINING ATTORNEY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36, and 38

**United States Patent and Trademark Office**

Reg. No. 2,672,464
Registered Jan. 7, 2003

## TRADEMARK
### PRINCIPAL REGISTER

## BLACKBERRY

RESEARCH IN MOTION LIMITED (CANADA CORPORATION)
295 PHILLIP STREET
WATERLOO, ONTARIO N2L 3W8, CANADA

FOR: ELECTRONIC HANDHELD UNITS FOR THE WIRELESS RECEIPT AND/OR TRANSMISSION OF DATA, THAT ENABLE THE USER TO KEEP TRACK OF OR MANAGE PERSONAL INFORMATION; SOFTWARE FOR THE REDIRECTION OF MESSAGES, GLOBAL COMPUTER NETWORK E-MAIL, AND/OR OTHER DATA TO ONE OR MORE ELECTRONIC HANDHELD UNITS FROM A DATA STORE ON OR ASSOCIATED WITH A PERSONAL COMPUTER OR A SERVER; AND SOFTWARE FOR THE SYNCHRONIZATION OF DATA BETWEEN A REMOTE STATION OR UNIT AND A FIXED OR REMOTE STATION OR UNIT, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 7-14-1998; IN COMMERCE 1-19-1999.

SN 75-612,560, FILED 12-28-1998.

KEVON CHISOLM, EXAMINING ATTORNEY

Int. Cl.: 38

Prior U.S. Cls.: 100, 101, and 104

## United States Patent and Trademark Office

Reg. No. 2,700,671

Registered Mar. 25, 2003

## SERVICE MARK
## PRINCIPAL REGISTER

## BLACKBERRY

RESEARCH IN MOTION LIMITED (CANADA CORPORATION)
295 PHILLIP STREET
WATERLOO, ONTARIO, CANADA N2L 3W8

FOR: E-MAIL SERVICE; WIRELESS DATA MES-SAGING SERVICES, PARTICULARLY SERVICES THAT ENABLE A USER TO SEND AND/OR RE-CEIVE MESSAGES THROUGH A WIRELESS DATA NETWORK; ONE-WAY AND TWO-WAY PAGING SERVICES, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 7-14-1998; IN COMMERCE 1-19-1999.

SN 75-612,563, FILED 12-28-1998.

KEVON CHISOLM, EXAMINING ATTORNEY

Int. Cls.: 9, 38 and 41

Prior U.S. Cls.: 21, 23, 26, 36, 38, 100, 101, 104 and 107

## United States Patent and Trademark Office

Reg. No. 2,844,340

Registered May 25, 2004

## TRADEMARK
## SERVICE MARK
## PRINCIPAL REGISTER

## BLACKBERRY

RESEARCH IN MOTION LIMITED (CANADA CORPORATION)
295 PHILLIP STREET
WATERLOO, ONTARIO, CANADA N2L 3W8

FOR: ELECTRONIC HANDHELD UNITS FOR THE WIRELESS RECEIPT AND/OR TRANSMISSION OF DATA THAT ENABLE THE USER TO KEEP TRACK OF OR MANAGE PERSONAL INFORMATION AND WHICH MAY ALSO HAVE THE CAPACITY TO TRANSMIT AND RECEIVE VOICE COMMUNICATIONS; SOFTWARE FOR THE REDIRECTION OF MESSAGES, GLOBAL COMPUTER NETWORK E-MAIL, AND OTHER DATA TO ONE OR MORE ELECTRONIC HANDHELD UNITS FROM A DATA STORE ON OR ASSOCIATED WITH A PERSONAL COMPUTER OR A SERVER; SOFTWARE FOR THE SYNCHRONIZATION OF DATA BETWEEN A REMOTE STATION OR UNIT AND A FIXED OR REMOTE STATION OR UNIT AND SOFTWARE WHICH ENABLES AND PROVIDES ONE-WAY AND TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 7-14-1998; IN COMMERCE 1-19-1999.

FOR: E-MAIL SERVICE; WIRELESS DATA MESSAGING SERVICES, PARTICULARLY SERVICES THAT ENABLE A USER TO SEND AND/OR RECEIVE MESSAGES THROUGH A WIRELESS DATA NETWORK; ONE-WAY AND TWO-WAY PAGING SERVICES; TRANSMISSION AND RECEPTION OF VOICE COMMUNICATION SERVICES; CONSULTATION ON THE TOPICS OF DEVELOPING AND INTEGRATING ONE-WAY OR TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, AND/OR COMMUNICATIONS, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 7-14-1998; IN COMMERCE 1-19-1999.

FOR: EDUCATIONAL SERVICES, NAMELY, CLASSES, SEMINARS AND CONFERENCES FOR THE PURPOSE OF PROVIDING INFORMATION TO THIRD PARTIES TO ASSIST THEM IN DEVELOPING AND INTEGRATING ONE-WAY OR TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, AND VOICE COMMUNICATIONS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 7-14-1998; IN COMMERCE 1-19-1999.

OWNER OF U.S. REG. NOS. 2,402,727, 2,402,728, AND 2,402,763.

SER. NO. 76-469,782, FILED 11-26-2002.

RONALD AIKENS, EXAMINING ATTORNEY

Int. Cls.: 9, 38 and 41

Prior U.S. Cls.: 21, 23, 26, 36, 38, 100, 101, 104 and 107

**United States Patent and Trademark Office**

Reg. No. 3,102,687
Registered June 13, 2006

## TRADEMARK
## SERVICE MARK
### PRINCIPAL REGISTER

# :::BlackBerry

RESEARCH IN MOTION LIMITED (CANADA CORPORATION)
295 PHILLIP STREET
WATERLOO, ONTARIO, CANADA N2L 3W8

FOR: ELECTRONIC HANDHELD UNITS AND ACCESSORIES THEREFORE, NAMELY, BATTERIES, CASES, BATTERY CHARGERS, HOLSTERS AND ANTENNAS, FOR THE WIRELESS RECEIPT AND/OR TRANSMISSION OF DATA AND WHICH MAY ALSO HAVE THE CAPABILITY TO TRANSMIT AND RECEIVE VOICE COMMUNICATIONS, NAMELY HANDHELD COMPUTERS AND PERSONAL DIGITAL ASSISTANTS; COMPUTER COMMUNICATIONS SOFTWARE FOR THE TRANSMISSION AND/OR RECEPTION OF MESSAGES, GLOBAL COMPUTER NETWORK E-MAIL, AND/OR OTHER DATA BETWEEN ONE OR MORE ELECTRONIC HANDHELD UNITS AND A DATA STORE ON OR ASSOCIATED WITH A PERSONAL COMPUTER OR A SERVER; COMPUTER COMMUNICATION SOFTWARE FOR THE SYNCHRONIZATION OF DATA BETWEEN A REMOTE STATION OR UNIT AND A FIXED OR REMOTE STATION OR UNIT AND SOFTWARE WHICH ENABLES AND PROVIDES ONE-WAY AND/OR TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 6-23-2004; IN COMMERCE 6-23-2004.

FOR: E-MAIL SERVICE; WIRELESS DATA MESSAGING SERVICES, PARTICULARLY SERVICES THAT ENABLE A USER TO SEND AND/OR RECEIVE MESSAGES THROUGH A WIRELESS DATA NETWORK; ONE-WAY AND TWO-WAY PAGING SERVICES; TRANSMISSION AND RECEPTION OF VOICE COMMUNICATION SERVICES, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 6-23-2004; IN COMMERCE 6-23-2004.

FOR: CONSULTING AND EDUCATIONAL SERVICES NAMELY, CLASSES, SEMINARS AND CONFERENCES FOR THE PURPOSE OF PROVIDING INFORMATION TO THIRD PARTIES TO ASSIST THEM IN DEVELOPING AND INTEGRATING ONE WAY OR TWO WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, AND/OR VOICE COMMUNICATIONS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 6-23-2004; IN COMMERCE 6-23-2004.

OWNER OF U.S. REG. NOS. 2,402,763, 2,844,340 AND OTHERS.

SER. NO. 76-610,159, FILED 9-3-2004.

MICHAEL KEATING, EXAMINING ATTORNEY

Int. Cls.: 9 and 38

Prior U.S. Cls.: 21, 23, 26, 36, 38, 100, 101 and 104

## United States Patent and Trademark Office

Reg. No. 3,105,797
Registered June 20, 2006

## TRADEMARK
## SERVICE MARK
## PRINCIPAL REGISTER



RESEARCH IN MOTION LIMITED (CANADA CORPORATION)
295 PHILLIP STREET
WATERLOO, ONTARIO, CANADA N2L 3W8

FOR: ELECTRONIC HANDHELD UNITS AND ACCESSORIES FOR THE WIRELESS RECEIPT AND/OR TRANSMISSION OF DATA AND WHICH MAY ALSO HAVE THE CAPABILITY TO TRANSMIT AND RECEIVE VOICE COMMUNICATIONS, NAMELY HANDHELD COMPUTERS AND PERSONAL DIGITAL ASSISTANTS; COMPUTER COMMUNICATIONS SOFTWARE FOR THE TRANSMISSION AND/OR RECEPTION OF MESSAGES, GLOBAL COMPUTER NETWORK E-MAIL, AND/OR OTHER DATA BETWEEN ONE OR MORE ELECTRONIC HANDHELD UNITS AND A DATA STORE ON OR ASSOCIATED WITH A PERSONAL COMPUTER OR A SERVER; COMPUTER COMMUNICATION SOFTWARE FOR THE SYNCHRONIZATION OF DATA BETWEEN A REMOTE STATION OR UNIT AND A FIXED OR REMOTE STATION OR UNIT AND A HANDHELD UNIT SOFTWARE WHICH ENABLES AND PROVIDES ONE-WAY AND/OR TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 6-23-2004; IN COMMERCE 6-23-2004.

FOR: E-MAIL SERVICE; WIRELESS DATA MESSAGING SERVICES, PARTICULARLY SERVICES THAT ENABLE A USER TO SEND AND/OR RECEIVE MESSAGES THROUGH A WIRELESS DATA NETWORK; ONE-WAY AND TWO-WAY PAGING SERVICES; VOICE TRANSMISSION AND RECEPTION SERVICES VIA TELECOMMUNICATIONS MEANS; TELECOMMUNICATIONS CONSULTING, NAMELY, ASSISTING THIRD PARTIES IN DEVELOPING AND INTEGRATING ONE-WAY OR TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, AND/OR VOICE COMMUNICATIONS, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 6-23-2004; IN COMMERCE 6-23-2004.

SER. NO. 76-977,899, FILED 9-3-2004.

MICHELLE DUBOIS, EXAMINING ATTORNEY

Int. Cl.: 41

Prior U.S. Cls.: 100, 101, and 107

## United States Patent and Trademark Office

Reg. No. 3,240,231

Registered May 8, 2007

## SERVICE MARK
### PRINCIPAL REGISTER



RESEARCH IN MOTION LIMITED (CANADA CORPORATION)
295 PHILLIP STREET
WATERLOO, ONTARIO, CANADA N2L 3W8

FOR: EDUCATIONAL SERVICES, NAMELY CONDUCTING CLASSES, SEMINARS, CONFERENCES AND WORKSHOPS TO ASSIST THIRD PARTIES IN DEVELOPING AND INTEGRATING ONE-WAY OR TWO-WAY WIRELESS CONNECTIVITY TO DATA, INCLUDING CORPORATE DATA, AND/OR VOICE COMMUNICATIONS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 6-0-2004; IN COMMERCE 6-0-2004.

SN 76-610,158, FILED 9-3-2004.

MICHELLE DUBOIS, EXAMINING ATTORNEY

# EXHIBIT 2

Exhibit 2 – Genuine RIM Battery Features

| Battery | Sample Image | Trade Dress Features | Safety Features |
|---|---|---|---|
| C-X2 |  | a rayed background comprised of thick and thin lines, where: the thick lines are of a uniform dark shade of green (PANTONE 584 C) and the thin lines are of a uniform light shade of green (PANTONE 584 C); and the lines appear to originate at a common nucleus off the left side of the battery and diverge across the battery from left to right in an expanding sunburst-style pattern;

the registered EMBLEM logo on the top-left (Registration Nos. 3105797 and 3240231) (the "EMBLEM Logo") where: two of the bottom shapes are shaded in the shade of green (PANTONE 584 C) with thin white lines superimposed; and three of the middle shapes are partially shaded in the light shade of green (PANTONE 584 C) with thin white lines superimposed, and the top two shapes are white;

on the bottom right side the trademark BLACKBERRY & DESIGN (Left) (Registration No. 3102687); and

the term "C-X2" on the top right side | Thermistor;

Thermal fuse;

Pressure vent;

Complies with safety standards promulgated by the IEEE Standards Organization |

85455682.1

| C-M2 |  | followed by a white silhouette icon of a lock.

a rayed background comprised of thick and thin lines, where: the thick lines are of a uniform dark shade of yellow (PANTONE 130 C) and the thin lines are of a uniform light shade of yellow (PANTONE 115 C); and the lines appear to originate at a common nucleus off the left side of the battery and diverge across the battery from left to right in an expanding sunburst-style pattern;

the EMBLEM Logo where: two of the bottom shapes are shaded in the shade of yellow (PANTONE 115 C) with thin white lines superimposed; and three of the middle shapes are partially shaded in the light shade of yellow (PANTONE 115 C) with thin white lines superimposed, and the top two shapes are white;

on the bottom right side the trademark BLACKBERRY & DESIGN (Left) (Registration No. 3102687); and

the term "C-M2" on the top right side followed by a white silhouette icon of a lock. | Thermistor;

Thermal fuse;

Pressure vent;

Complies with safety standards promulgated by the IEEE Standards Organization |

| C-S2 (2009) | | | |
|---|---|---|---|
|  | a rayed background comprised of thick and thin lines, where: the thick lines are of a dark shade of blue (PANTONE 647 C) and the thin lines are of a uniform dark shade of blue (PANTONE 646 C); and the lines appear to originate at a common nucleus off the left side of the battery and diverge across the battery from left to right in an expanding sunburst-style pattern;<br><br>the EMBLEM Logo where: half of the shapes are shaded in the shade of blue (PANTONE 647 C) with thin white lines superimposed and half of the shapes are white;<br><br>on the bottom right side the trademark BLACKBERRY & DESIGN (Left) (Registration No. 3102687); and<br><br>the term "C-M2" on the top right side followed by a white silhouette icon of a lock. | Thermistor;<br><br>Thermal fuse;<br><br>Pressure vent;<br><br>Complies with safety standards promulgated by the IEEE Standards Organization | |

85455682.1

| C-S2 (2007) |  | a blue (PANTONE 647 C) background covered with an array of grey (PANTONE 877 C METALLIC) dots of an even size except at an area towards the center-right of the battery where the dots increase in size towards a central dot to create the visual effect of a magnified section of the label; | Thermistor; |
| | | | Thermal fuse; |
| | | the code "C-S2" on the top left side in white followed by a white silhouette icon of a lock; | Pressure vent; |
| | | | Complies with safety standards promulgated by the IEEE Standards Organization |
| | | on the bottom right side the trademark BLACKBERRY & DESIGN (Left) (Registration No. 3102687); | |
| | | a thick gray (PANTONE 877 C METALLIC) line bordering the left and right sides of the battery; and | |
| | | a blue (PANTONE 647 C) half-moon border pattern on the top and bottom sides of the battery framed by four rows of increasingly smaller blue (PANTONE 647 C) dots against a gray (PANTONE 877 C METALLIC) background. | |
| | | the term "C-S2" on the top left side followed by a white silhouette icon of a lock.. | |

85455682.1

| D-X1 |  | a top rectangle in grey (PANTONE COOL GRAY 8 C) with a semi-circle cut out at each end in light grey (PANTONE COOL GRAY 8 C – varied) having BLACKBERRY & DESIGN (Left) (Registration No. 3102687) on the bottom right side; and

a lower rectangle in green (PANTONE 583 C) with the letters D-X1 and lock silhouette in white on the left and stylized symbols for positive and negative on the right. | Thermistor;

Thermal fuse;

Pressure vent;

Complies with safety standards promulgated by the IEEE Standards Organization |

85455682.1